Diane LOVEJOY–WILSON, Plaintiff,

v.

NOCO MOTOR FUELS, INC., Defendant.

No. 97–CV–72C.

United States District Court, W.D. New York.

Jan. 7, 2003.

Connors & Vilardo, LLP, Buffalo, NY (Mark R. UBA, James W. Grable, Jr., of Counsel), for Plaintiff.

Schröder, Joseph & Associates, Buffalo, NY (Linda Joseph, of Counsel), for Defendant.

### *BACKGROUND*

CURTIN, District Judge.

Plaintiff Diane Lovejoy–Wilson, a former employee of defendant NOCO Motor Fuel, Inc. ("NOCO"), brought this action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the New York Human Rights Law ("NYHRL"), New York Executive Law § 296, *et seq.*, alleging that NOCO intentionally discriminated against her on the basis of her disability by failing to promote her to the positions of manager and assistant manager, retaliating against her for complaining about her treatment, requiring her to take a medical examination, failing to accommodate her disability, and constructively discharging her (Item 1). By orders dated December 30, 1999 (Item 40) and July 5, 2000 (Item 51), this court granted summary judgment in favor of NOCO on all of the plaintiff's substantive claims, and dismissed the complaint. On August 31, 2001, the Second Circuit affirmed the grant of summary judgment as to plaintiff's claim based on failure to promote to the position of manager, but vacated the grant of summary judgment with respect to plaintiff's claims of discrimination based on failure to promote to the position of assistant manager and retaliation, and remanded the case for further proceedings. *Lovejoy–Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208 (2d Cir. 2001).

In anticipation of trial, the parties have filed multiple motions seeking several forms of relief. Defendant moves (1) to strike plaintiff's demand for a jury trial on her ADA claim (Item 72), (2) *in limine* to preclude plaintiff from offering evidence or argument regarding (a) proceedings at the agency level, (b) the Second Circuit's decision, (c) NOCO's alleged failure to engage in the interactive process as required under the ADA (Item 66), and (d) to dismiss plaintiff's claim for punitive damages (Item 83), and (3) for separate trials on the issues of liability and damages (Item 71). Plaintiff moves *in limine* for an order precluding defendant from offering evidence on several matters, pursuant to Federal Rules of Evidence 401, 403, and 404 (Item 74). Each of these matters is addressed in turn below.

## DISCUSSION

### 1. Defendant's Motion to Strike Plaintiff's Jury Demand

█ NOCO argues that because the ADA does not provide for compensatory or punitive damages as remedies for employment retaliation and failure to promote, plaintiff is not entitled to a jury trial on these claims. NOCO concedes that plaintiff is entitled to a jury trial on her NYHRL claims.

#### a. Retaliation

In support of its motion to strike the demand for a jury trial on plaintiff's retaliation claim, NOCO primarily relies on the decision of the United States District Court for the Western District of Missouri in *Brown v. City of Lee's Summit, Mo.,* 1999 WL 827768 (W.D.Mo. June 1, 1999) (publication page numbers not available). In *Brown,* the district court engaged in an extensive statutory analysis and concluded that Congress did not intend to permit a plaintiff suing for employment retaliation under section 12203 of the ADA to recover compensatory or punitive damages as remedies. The court reasoned that since entitlement to a jury trial is contingent upon entitlement to compensatory and punitive damages, the plaintiff was not entitled to a jury trial on that claim. *See also Boe v. AlliedSignal Inc.,* 131 F.Supp.2d 1197, 1202–03 (D.Kan.2001) (relying on *Brown* to reach same conclusion); *contra Ostrach v. Regents of the Univ.,* 957 F.Supp. 196, 200–01 (E.D.Cal.1997) (reaching opposite conclusion).

However, as plaintiff points out, more recent decisions from the United States Court of Appeals for the Eighth Circuit (in which the Western District of Missouri is located) have recognized the appropriateness of having a jury consider ADA retaliation claims. *See, e.g., Foster v. Time Warner Entertainment Company, L.P.,* 250 F.3d 1189 (8th Cir.2001) (affirming jury verdict finding that the plaintiff was terminated in retaliation for opposing unlawful discrimination under the ADA, and awarding lost wages and compensatory and punitive damages); *see also Stafne v. Unicare Homes,* 266 F.3d 771 (8th Cir. 2001) (affirming jury verdict in favor of employer on claims of disability discrimination and retaliation for filing EEOC complaint). In light of these circuit court decisions, NOCO's reliance on the district court's holding in *Brown* is unconvincing.

In addition, courts within the Second Circuit have routinely allowed juries to decide ADA retaliation claims. For example, in *Muller v. Costello,* 187 F.3d 298 (2d Cir.1999), the Court of Appeals affirmed the jury's findings of liability and compensatory damages in favor of plaintiff on his claim of retaliation in violation of the ADA. The jury had found both intentional disability discrimination and retaliation, and awarded the plaintiff a total of $420,300 in damages. The district court denied the defendant's post-trial motions for judgment as a matter of law or, in the alternative, for a new trial, finding the evidence sufficient to justify the jury's determinations that the plaintiff was disabled under the ADA and that the defendant retaliated against him for exercising his legal rights. *See Muller v. Costello,* 997 F.Supp. 299, 302 (N.D.N.Y.1998). The district court granted the defendant's motion to cap the award of compensatory damages at $300,000 pursuant to 42 U.S.C. § 1981a(b)(3). *Id.* at 302–03. On appeal, and after extensive review of the record below, the Second Circuit ultimately agreed with the defendant's argument that the evidence was insufficient to support the jury's conclusion that the plaintiff suffered from a disability within the meaning of the ADA. Nonetheless, the circuit court affirmed the jury's award of compensatory damages as "justified solely on the retaliation finding." *Muller,* 187 F.3d at 314.

*See also Bilancione v. County of Orange,* 182 F.3d 898, 1999 WL 376836 (2d Cir. 1999) (Table; text in Westlaw at 1999 WL 376836 (2nd Cir.1999); affirming jury award of $465,692.31 on plaintiff's claims for disability discrimination and retaliation in violation of ADA).

Significantly, the Second Circuit's decision remanding this case for further proceedings contains several references which indicate the circuit court's intent that plaintiff's retaliation claim be tried by a jury. *Lovejoy–Wilson,* 263 F.3d at 223–24 (a "jury could reasonably find" that NOCO's statements in a January 1994 letter provided basis for retaliation claim; "[a] jury could conclude" that plaintiff was suspended without pay for a week shortly after filing EEOC complaint; time span between filing of EEOC complaint and suspension "is short enough to permit a jury to infer a causal connection" between protected activity and adverse employment action).

Accordingly, NOCO's motion is denied to the extent it seeks an order striking plaintiff's demand for a jury trial on her retaliation claim.

### b. Failure to Promote

■ NOCO also contends that plaintiff is not entitled to a jury trial on her failure to promote claim because that claim is, in essence, a "disparate impact" claim for which compensatory and punitive damages are unavailable as a remedy under the ADA. This contention is also rejected for several reasons.

First, this construction of plaintiff's failure to promote claim ignores the circuit court's extensive analysis of this same claim under the ADA's "reasonable accommodation" provisions, without so much as mentioning the phrase "disparate impact." *See Lovejoy–Wilson,* 263 F.3d at 215–22. There is no dispute that compensatory and punitive damages, and trial by jury, are

available for a claim of failure to accommodate. *See* 42 U.S.C. § 1981a(a)(2) (compensatory and punitive damages available to remedy failure to accommodate under 42 U.S.C. § 12112(b)(5)). Second, as with plaintiff's retaliation claim, the circuit court's opinion is replete with references indicating the court's presumption that the failure to promote claim will be tried by a jury. *See, e.g., Lovejoy–Wilson,* 263 F.3d at 217 ("a reasonable jury could find" that plaintiff could perform essential functions of assistant manager job with reasonable accommodation; "a rational jury could find" that plaintiff was able to perform essential functions of assistant manager position at store of her choosing with a reasonable accommodation; "a jury could reasonably find" that NOCO did not reasonably accommodate plaintiff's disability); *id.* at 218 ("[a] rational jury could find" that a reasonable accommodation was available but not offered; record contains "more than enough evidence to support a jury finding" that defendant flatly refused to afford plaintiff the reasonable accommodation to which she was entitled); *id.* at 222 ("a jury could reasonably find that possessing a driver's license is not a qualification to be a NOCO assistant manager").

In addition, NOCO concedes the absence of any case law support for its argument that trial by jury is unavailable where the "failure to accommodate" claim arises in the context of assessing the disparate impact of a facially neutral policy (here, the requirement that an assistant manager have a driver's license). On the other hand, plaintiff has cited to several cases in which ADA claims similar to plaintiff's claim in this case were tried by a jury. *See, e.g., Gile v. United Airlines, Inc.,* 213 F.3d 365 (7th Cir.2000) (failure to accommodate plaintiff's psychological disorder by reassignment to daytime shift); *Jacques v. Clean–Up Group, Inc.,* 96 F.3d

506 (1st Cir.1996) (failure to accommodate plaintiff's inability to drive to job assignment due to epilepsy); *Connolly v. Bidermann Industries U.S.A., Inc.,* 56 F.Supp.2d 360 (S.D.N.Y.1999) (failure to accommodate plaintiff's inability to fly due to tinnitus); *Geuss v. Pfizer, Inc.,* 971 F.Supp. 164 (E.D.Pa.1996) (failure to accommodate request for transfer to work environment less conducive to exacerbation of plaintiff's asthma condition).

Accordingly, considering the clear import of these cases and the Second Circuit's remand order in this case, and in the absence of any authority for holding that compensatory and punitive damages are unavailable to remedy an employer's failure to accommodate an employee's disability based on a facially neutral job requirement, NOCO's motion to strike plaintiff's demand for a jury trial on her failure to promote claim is denied.

**2. Defendant's Motions *In Limine***

**a. Evidence and Argument Regarding Agency Proceedings**

■ Defendant moves to exclude evidence at trial of the investigation and findings made by the Equal Employment Opportunity Commission ("EEOC") regarding plaintiff's administrative discrimination charge. In this regard, the Second Circuit has held that the findings of an administrative agency resulting from an investigation made pursuant to authority granted by law are generally admissible under the "public records" exception to the hearsay rule, "unless the sources of information or other circumstances indicate lack of trustworthiness." Fed. R.Evid. 803(8)(C); *see Paolitto v. John Brown E.&C., Inc.,* 151 F.3d 60, 64 (2d Cir.1998) (citing *Chandler v. Roudebush,* 425 U.S. 840, 863 n. 39, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976)). However, as explained in *Paolitto,* the fact that evidence falls within a hearsay exception does not

by itself make it admissible *per se.* Rather, "[t]he district court generally has discretion to exclude such hearsay on other grounds, such as where the evidence's probative value is substantially outweighed by the danger of unfair prejudice." *Paolitto,* 151 F.3d at 64 (citing Fed.R.Evid. 403; also citing *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 167–68, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988)). In exercising its discretion, the trial court should consider "the quality of the [evidence], its potential impact on the jury, and the likelihood that the trial will deteriorate into a protracted and unproductive struggle over how the evidence admitted at trial compared to the evidence considered by the agency." *Id.* at 65; *see also City of New York v. Pullman Inc.,* 662 F.2d 910, 915 (2d Cir.1981), *cert. denied sub nom. Rockwell International Corporation v. City of New York,* 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982); *Denny v. Hutchinson Sales Corp.,* 649 F.2d 816, 821–22 (10th Cir.1981).

In a footnote, the *Paolitto* court noted that the difference between an agency's "probable cause" determination and a letter of violation " 'becomes critical when considering the potential for prejudicial impact on a jury.' " *Paolitto,* 151 F.3d at 65 n. 3 (quoting *Gilchrist v. Jim Slemons Imports, Inc.,* 803 F.2d 1488, 1500 (9th Cir.1986)). As explained by the Ninth Circuit in *Gilchrist:*

> In a letter of violation the EEOC concludes that a violation of [Title VII] has occurred, whereas in a probable cause determination the EEOC determines only that there is probable cause to conclude that a violation of Title VII has occurred. A finding of probable cause does not suggest to the jury that the EEOC has already determined that there has been a violation.... A letter of violation, however, represents a determination by the EEOC that a violation

of the Act has occurred and thus results in a much greater possibility of unfair prejudice.

*Gilchrist,* 803 F.2d at 1500; *accord EEOC v. Manville Sales Corp.,* 27 F.3d 1089, 1095 (5th Cir.1994) (following *Gilchrist*), *cert. denied,* 513 U.S. 1190, 115 S.Ct. 1252, 131 L.Ed.2d 133 (1995).

In this case, defendant initially sought an order generally excluding any evidence at trial pertaining to the EEOC's administrative investigation and findings. When questioned at oral argument, defense counsel specifically identified as objectionable only the EEOC's May 7, 1996 letter containing the agency's determination "that the evidence obtained during the investigation establishes violations of the ADA." (Item 74, Ex. H).

In order to assist the court and the parties in resolving this important aspect of defendant's motion *in limine,* plaintiff's counsel was directed to submit for the record a copy of the EEOC file (*see* Item 81). Upon review of this submission, it is apparent that much of the documentation is duplicative, and that much of the information in the file is not a matter of controversy. The parties shall stipulate as to those documents in the EEOC which shall be admitted in evidence. The remaining part of the record shall be submitted to the court for further review under the admissibility standards set forth above. Counsel shall contact chambers prior to the conference scheduled for April 21, 2003 (*see* concluding paragraph of this order) to schedule a meeting for this purpose, at a mutually convenient time.

**b. Evidence and Argument Regarding the Second Circuit's Decision**

 NOCO also seeks an order precluding plaintiff from offering evidence or argument at trial regarding the Second Circuit's August 31, 2001 decision in this case. Counsel has represented to the court that plaintiff does not intend to offer any portion of the decision as evidence at trial. To the extent plaintiff intends to rely on the decision in fashioning legal arguments and proposed jury charges, such reliance would be an appropriate application of the "law of the case" doctrine. *See DiLaura v. Power Authority of the State of New York,* 982 F.2d 73, 76 (2d Cir.1992) (when court decides upon rule of law, decision should continue to govern same issues in subsequent stages in same case); *see also* 1B James W. Moore, Jo D. Lucas & Thomas S. Currier, MOORE'S FEDERAL PRACTICE ¶ 0.404[1], at 117 ("Under the doctrine of law of the case, a decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation.").

Accordingly, defendant's motion *in limine* is granted to the extent it seeks an order precluding plaintiff from offering evidence or argument at trial regarding the Second Circuit's decision.

**c. Evidence or Argument Regarding NOCO's Failure to Engage in Interactive Process**

NOCO also contends that plaintiff should be precluded from offering evidence or argument with respect to her claim that NOCO is liable under the ADA for failure to engage in the interactive process. Without citation to case law or statutory authority, NOCO argues that this claim constitutes a separate and distinct ADA violation which was not pleaded in the complaint. This argument is rejected.

 The thrust of the holdings in the cases discussing the issue, and cited with approval by the Second Circuit in its *Lovejoy-Wilson* decision, is that the employer's failure to engage in the interactive process need not be affirmatively pleaded as an independent ADA cause of action in order

to bring the issue before the jury. *See, e.g., Jackan v. New York State Dep't of Labor,* 205 F.3d 562, 566 (2d Cir.), *cert. denied,* 531 U.S. 931, 121 S.Ct. 314, 148 L.Ed.2d 251 (2000) (citing *Beck v. Univ. of Wis. Bd. of Regents,* 75 F.3d 1130, 1135 (7th Cir.1996)); *see also Rehling v. City of Chicago,* 207 F.3d 1009, 1015–16 (7th Cir. 2000) (plaintiff cannot base ADA "reasonable accommodation" claim solely on allegation that the employer failed to engage in interactive process); *Willis v. Conopco, Inc.,* 108 F.3d 282, 285 (11th Cir.1997) (no ADA liability merely for failing to engage in interactive process itself). Rather, the "interactive process" envisioned by Congress in enacting the ADA is one "by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Lovejoy–Wilson,* 263 F.3d at 218 (citations omitted). As such, an employer's failure to engage in the interactive process is insufficient by itself to support employer liability; the employee must also show that the breakdown of the interactive process led to the employer's failure to provide a reasonable accommodation. *See Rehling,* 207 F.3d at 1015–16; *see also Emerson v. Northern States Power Company,* 256 F.3d 506, 515 (7th Cir.2001).

In recognition of these holdings, courts have allowed juries to consider evidence of an employer's failure to engage in an interactive process as *prima facie* proof that the employer may have been acting in bad faith, *see Fjellestad v. Pizza Hut of America, Inc.,* 188 F.3d 944, 952 (8th Cir.1999), or in reckless indifference to the employee's federally protected rights. *Connolly,* 56 F.Supp.2d at 369. In the absence of any citation to cases supporting the contrary result, plaintiff should not be precluded from presenting such evidence at trial in this case.

Accordingly, defendant's motion *in limine* is denied to the extent it seeks to preclude plaintiff from offering evidence or argument with respect to defendant's alleged failure to engage in the interactive process.

#### d. Motion to Dismiss Punitive Damages Claim

■ Defendant also moves *in limine* for an order dismissing plaintiff's claim for punitive damages, and precluding plaintiff from introducing any evidence at trial relative to her punitive damages claim. Plaintiff contends that the motion should be denied because the proof at trial will support her punitive damages claim, and because the motion is untimely.

■ Addressing plaintiff's latter contention first, I find that the request to dismiss the punitive damages claim may properly be brought as a pretrial motion *in limine.* Several cases have entertained such motions on the eve of trial as procedural devices designed to narrow the issues to be presented to the jury. *See, e.g., Pepe v. Maklansky,* 67 F.Supp.2d 186, 187–88 (S.D.N.Y.1999) (denying motion *in limine* seeking order dismissing employee's punitive damages claim in civil assault action, finding it "well settled that the determination whether to award punitive damages lies in the discretion of the trier of the facts."); *Baxter Diagnostics, Inc. v. Novatek Medical, Inc.,* 1998 WL 665138, at *1–2 (S.D.N.Y. September 25, 1998) (granting defendant's motion *in limine* dismissing claim for punitive damages in contract action); *Tout v. County of Erie,* 1998 WL 683770, at * (W.D.N.Y. September 9, 1998) (granting motion *in limine* precluding evidence relating to punitive damages against municipal employees sued in their official capacities only); *cf. Foster,* 250 F.3d at 1196–97 (finding sufficient evidence to sustain jury's punitive damages award in ADA case).

■ Turning to the merits of defendant's motion, it is well recognized that punitive damages are appropriate in an ADA case if the plaintiff demonstrates that her employer engaged in intentional discrimination with "malice or with reckless indifference to the [plaintiff's] federally protected rights ...." 42 U.S.C. § 1981a(b)(1); *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 529–30, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999); *Zimmermann v. Associates First Capital Corp.*, 251 F.3d 376, 384 (2d Cir.2001). "Malice" and "reckless indifference" in this context refer to the employer's knowledge that it may be acting in violation of federal law, rather than to the egregiousness of the employer's conduct. *Kolstad*, 527 U.S. at 535, 119 S.Ct. 2118; *see also Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 235–36 (2d Cir.2000) (vacating jury's punitive damage award based on absence of evidence indicating employer "discriminate[d] in the face of a perceived risk that its actions [would] violate" the plaintiff's ADA rights).

As recognized in *Kolstad*, there may be instances in which the intentional violation of a plaintiff's ADA rights does not give rise to the award of punitive damages. For example:

> [T]he employer may simply be unaware of the relevant federal prohibition. There will be cases, moreover, in which the employer discriminates with the distinct belief that its discrimination is lawful. The underlying theory of discrimination may be novel or otherwise poorly recognized, or an employer may reasonably believe that its discrimination satisfies a bona fide occupational qualification defense or other statutory exception to liability.

*Kolstad*, 527 U.S. at 536–37, 119 S.Ct. 2118.

In this case, the parties have once again focused on the January 26, 1994 letter from NOCO's president, Robert Newman, accusing plaintiff of "misinterpreting the law," using the ADA to intimidate NOCO to change its "non-discriminatory operational policies," and making "slanderous" allegations against NOCO (Item 88, Appendix A). Mr. Newman also stated that, "[a]fter review with counsel, we feel very strongly about our position." (*Id.*). Defendant contends that this letter provides undisputed proof of NOCO's belief in the lawfulness of its conduct, while plaintiff characterizes the letter as raising a classic issue of fact for the jury to consider with respect to the question whether NOCO discriminated in the face of a perceived risk that its refusal to accommodate plaintiff's epilepsy would violate plaintiff's ADA rights. In light of the language in the Second Circuit's remand order suggesting that the Newman letter could "support a jury finding that NOCO flatly refused to afford the plaintiff the reasonable accommodation to which she was entitled ...," *Lovejoy–Wilson*, 263 F.3d at 218, I am much more inclined to accept plaintiff's characterization of the evidentiary value of the letter than defendant's.

In addition, at oral argument, plaintiff's counsel referred to other potential evidence in support of punitive damages. For example, counsel cited NOCO's asserted concerns about plaintiff's health, and cash shortages at her store, when denying her requests for a promotion—assertions which were subsequently contradicted when NOCO promoted her to an assistant manager position (albeit at an undesirable location). Taken as a whole, this proffer highlights the nature of the significant factual issues concerning plaintiff's claim that NOCO acted with malice or reckless indifference to her federally protected rights, warranting submission of the punitive damages claim to the jury.

■ Finally, the court's research suggests that defendant's concerns over the prejudicial effect of trial evidence pertaining to punitive damages may be adequately addressed by the court's responsibility "to make certain that the punitive damages are reasonable in their amount and rational in light of their purpose to punish what has occurred and to deter its repetition." *Lee v. Edwards,* 101 F.3d 805, 809 (2d Cir.1996) (citing *Vasbinder v. Scott,* 976 F.2d 118, 121 (2d Cir.1992) (internal quotations omitted)); *see also BMW of N. America, Inc. v. Gore,* 517 U.S. 559, 574–75, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) (discussing factors for court to consider in assessing reasonableness of punitive damage awards). Indeed, in recognition of this duty, several courts have reduced juries' punitive damages awards in ADA cases. *See, e.g., Cline v. Wal–Mart Stores, Inc.,* 144 F.3d 294 (4th Cir.1998) (jury's punitive damages award of $182,500 reduced to $50,000; compensatory damages award of $117,500 reduced to $10,000); *Equal Employment Opportunity Commission v. Mid–Continent Security Agency, Inc.,* 2001 WL 800089 (N.D.Ill. July 12, 2001) (jury's punitive damages award of $184,000 was "far more than was reasonably required to meet the objectives of punishment and deterrence;" reduced to $50,000); *Mahoney v. Canada Dry Bottling Company of New York/Coors Distributing Company of New York,* 1998 WL 231082 (E.D.N.Y. May 7, 1998) (jury's punitive damages award of $650,000 reduced to $100,000); *Geuss,* 971 F.Supp. at 176–79 (jury's punitive damage award of $150,000 constituted "substantial windfall" to plaintiff; reduced to $17,500).

Accordingly, defendant's motion to dismiss plaintiff's claim for punitive damage is denied.

### 3. Defendant's Motion to Bifurcate

■ Defendant also moves for an order directing separate trials on the issues of liability and damages. In deciding whether to hold separate trials, the court should consider whether bifurcation will further convenience, avoid prejudice, or be conducive of expedition and economy. *See* Fed. R.Civ.P. 42(b); *cf. Vichare v. AMBAC Inc.,* 106 F.3d 457, 466 (2d Cir.1996); *Dayton Monetary Associates v. Donaldson, Lufkin & Jenrett Securities Corporations,* 1999 WL 159889, at *1 (S.D.N.Y. March 22, 1999).

Even though plaintiff does not oppose defendant's application in this regard, the court finds no reason to bifurcate. Evidence relating to compensatory damages will be brief, and no reason has been stated as to why plaintiff's actual monetary losses cannot be stipulated. Simply put, the parties have not demonstrated any advantage to bifurcation. In the court's view, it would simply make a straightforward case more complicated.

Accordingly, defendant's motion for separate trials on the issues of liability and damages is denied.

### 4. Plaintiff's Motion *In Limine*

Plaintiff seeks to preclude NOCO from offering several categories of evidence at trial on the basis of the Second Circuit's remand order and the Federal Rules of Evidence pertaining to relevance. Specifically, plaintiff seeks to preclude (a) evidence pertaining to plaintiff's alleged failure to take medication for her epilepsy condition, (b) evidence pertaining to plaintiff's alleged attempt to hide her epilepsy from defendant, (c) evidence pertaining to defendant's offer of promotion to the position of assistant manager at another store, (d) evidence pertaining to NOCO's defense that plaintiff is not a qualified individual because she poses a threat to the health or safety of others, (e) evidence pertaining to NOCO's reimbursement of plaintiff's wages for the period of her suspension,

and (f) evidence pertaining to plaintiff's prior employment, including her discrimination claim against her former employer.

### a. Failure to Take Medication

█ Plaintiff seeks to preclude defendant from offering proof to show that plaintiff failed to take the medication prescribed to control her epileptic seizures. According to plaintiff, the only conceivable reason for offering such evidence would be to show or suggest that plaintiff did not qualify as an "individual with a disability" under the ADA as an element of her *prima facie* case, which the Second Circuit has already found to be beyond dispute. *Lovejoy–Wilson,* 263 F.3d at 216 ( "NOCO does not dispute that the plaintiff suffers from epilepsy or that epilepsy constitutes a disability under the ADA, a proposition that is well established.") (citing 29 C.F.R. 1615.103(1)(ii); also citing *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 488, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); other citations omitted).

In *Sutton,* the Supreme Court held that the determination of whether a person has a disability under the ADA requires an individualized inquiry into the effect of the individual's impairment on her major life activities, and whether those effects are mitigated by medication or corrective measures. *See Sutton,* 527 U.S. at 483, 487, 119 S.Ct. 2139. Plaintiff argues that because the issue of her disability has already been determined, proof that she failed to mitigate the effects of her epilepsy by medication is irrelevant and should

be excluded under Fed.R.Evid. 401 [1] or, in the alternative, Fed. Rule Evid. 403.[2]

Defendant does not contest the import of the Second Circuit's prior findings on plaintiff's *prima facie* showing of disability, or the holding in *Sutton.* Rather, NOCO argues that proof of plaintiff's medication usage has direct bearing on the issue of retaliation. According to NOCO, the extent to which plaintiff was taking her prescribed medication is relevant to whether plaintiff misled NOCO as to the seriousness of her condition, and whether NOCO's request that plaintiff undergo a medical exam was done with the intent to retaliate or was instead based on a legitimate concern for plaintiff's health and the health of other employees.

Based on these arguments, I find that plaintiff has failed to make a convincing showing that proof of the extent of her medication use would have no tendency to make the existence of facts of consequence to the determination of her retaliation claim more probable or less probable than it would be without the evidence. As such, these questions are appropriate for jury consideration, and issues of relevance or prejudice can be adequately addressed upon timely objection at trial, or in the charge to the jury.

Accordingly, plaintiff's motion *in limine* is denied to the extent it seeks to preclude NOCO from offering evidence of plaintiff's failure to take her seizure medication.

1. Rule 401 provides:
 Definition of "Relevant Evidence"
 "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

2. Rule 403 provides:

Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

### b. Plaintiff's Alleged Attempt to Hide Her Epilepsy

Plaintiff also seeks to preclude NOCO from offering evidence or argument pertaining to plaintiff's alleged attempt to hide her epilepsy when she began her employment in August 1992. Defendant contends that such evidence is relevant to the issues of notice and intent, which remain matters of dispute. With respect to notice, the Second Circuit stated as follows:

> [T]here is ample evidence from which a jury could reasonably conclude that NOCO had notice of the plaintiff's disability. Although there is some debate about when NOCO received such notice, there is evidence, which we must credit at this stage of the proceedings, from which a jury could conclude that NOCO learned about the plaintiff's disability in December 1992.

*Lovejoy–Wilson,* 263 F.3d at 216.

With respect to intent, defendant argues that evidence of plaintiff's attempts to conceal the nature and extent of her seizures early in her employment may be relevant to the question of whether defendant had a reasonable basis for its stated concerns about her health in determining her eligibility for promotion.

As this discussion indicates, factual issues remain in the case with respect to both notice and intent, and the court is reluctant at this stage to make a ruling precluding either party from presenting its relevant evidence to the jury. Again, questions of ultimate relevance and prejudice can be adequately addressed by way of appropriate and timely objections at trial, and in the jury charge.

Accordingly, plaintiff's motion *in limine* is denied to the extent it seeks to exclude evidence and argument pertaining to plaintiff's alleged attempt to hide her epilepsy.

### c. Offer of Promotion to Position of Assistant Manager at Another Store

Plaintiff also seeks to preclude NOCO from presenting evidence and argument pertaining to its offer to promote plaintiff to the position of assistant manager at another store (store number S–40). According to plaintiff, the law of the case establishes that she was entitled to a reasonable accommodation to allow her the opportunity to compete for the assistant manager position *at the store of her choice,* without regard to the reason for choosing that particular store. *See Lovejoy–Wilson,* 263 F.3d at 218.

In this regard, the Second Circuit stated as follows:

> In making the determination whether NOCO failed to accommodate the plaintiff's disability, the *reason* for her desire for that particular job—personal convenience or otherwise—does not matter. She was entitled to a reasonable accommodation, if one was available, to permit her to compete with nondisabled applicants on an equal basis to become assistant manager at the store of her choice. A rational jury could find on the basis of the evidence adduced that such a reasonable accommodation was available but not offered to her.
>
> ... [T]here is more than enough evidence to support a jury finding that NOCO flatly refused to afford the plaintiff the reasonable accommodation to which she was entitled. [Two January 1994 letters from NOCO management] ..., and evidence of the plaintiff's subsequent efforts to become assistant manager at S–44, recited above, would suffice. And NOCO's offer of a position at S–40 obviously does not constitute an accommodation of the plaintiff's disabili-

ty that would enable her to obtain the position she wanted at S–44.

*Id.*

■ This statement, read as a whole, suggests that the determination as to whether NOCO failed to accommodate the plaintiff's disability remains a question for the jury to consider based upon the proof, including testimony and documents pertaining to the availability of a reasonable accommodation at S–44, the offer of an alternative position at S–40, the letters from management, and any other proof deemed relevant and admissible in the case. Indeed, as defendant points out in its motion papers, statements made by a court in a prior ruling on summary judgment "should be interpreted only in light of the limited purpose for which it was made, namely, to determine whether summary judgment was appropriate, and not for the purpose of finding facts or making legal conclusions on a full record disposing of the case on the merits." *Reefer and General Shipping Co., Inc. v. Great White Fleet, Ltd.,* 1995 WL 575290, at *5 (S.D.N.Y. September 28, 1995) (citing cases).

Accordingly, plaintiff's motion *in limine* is denied to the extent it seeks to preclude proof of NOCO's offer to promote plaintiff to the position of assistant manager at store number S–40.

### d. Threat to Health or Safety of Others

Plaintiff also seeks to preclude testimony and argument pertaining to whether she posed a direct threat to the health or safety of other individuals in the workplace. This issue pertains to the affirmative defense set forth at 42 U.S.C. § 12113(b),[3] as to which the defendant bears the burden of proof. *See Nunes v. Wal–Mart Stores, Inc.,* 164 F.3d 1243, 1247 (9th Cir.1999).

In its prior ruling vacating this court's grant of summary judgment to NOCO, the Second Circuit found that NOCO had failed to provide evidence to establish the "direct threat" affirmative defense as a matter of law. *See Lovejoy–Wilson,* 263 F.3d at 219–21. The circuit court also noted that this affirmative defense "would be available on [plaintiff's failure to promote *without* an accommodation] claim if the facts supported it. As we held with respect to her failure to promote *with* an accommodation claim, . . . however, NOCO has not begun to establish that it is entitled to the benefit of that defense as a matter of law." *Id.* at 222 (emphasis added).[4] This discussion suggests that, as with the issue of reasonable accommodation, the "direct threat" issue remains open

**3.** Section 12113 provides as follows:

(a) In general

It may be a defense to a charge of discrimination under this chapter that an alleged application of qualification standards, tests, or selection criteria that screen out or tend to screen out or otherwise deny a job or benefit to an individual with a disability has been shown to be job-related and consistent with business necessity, and such performance cannot be accomplished by reasonable accommodation, as required under this subchapter.

(b) Qualification standards

The term "qualification standards" may include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace.

42 U.S.C. § 12113(a), (b).

**4.** The Second Circuit went on to state as follows:

Although we question the need for the plaintiff to pursue her claim of failure to promote without an accommodation in light of the viability of her easier-to-establish claim of failure to promote with an accommodation, we hold that summary judgment should not have been granted against her on this claim either.

*Lovejoy–Wilson,* 263 F.3d at 222.

for the jury's determination based on the evidence presented at trial.

Accordingly, plaintiff's motion *in limine* is denied to the extent it seeks to preclude testimony and argument pertaining to whether she posed a direct threat to the health or safety of other individuals in the workplace.

### e. Reimbursement of Wages

Plaintiff also seeks to preclude evidence pertaining to NOCO's reimbursement of plaintiff's wages for the period of her suspension. Once again, the language in the Second Circuit's remand order reveals the circuit court's intent that this evidence be presented to the jury. The court stated:

> A jury could conclude that shortly [after she filed her complaint with the EEOC] the plaintiff was suspended without pay for a week. Even if the jury agrees with NOCO that the plaintiff was later reimbursed, suspension without pay is sufficient to constitute an adverse employment action in this context. . . . The plaintiff was suspended for a week without pay. Thus, she lost wages. While a NOCO official testified that the plaintiff was reimbursed for her lost wages, the official admitted that the reimbursement occurred "some time later." The plaintiff thus may have at least suffered the loss of the use of her wages for a time. This would be sufficient to support a jury's finding that she suffered an adverse employment action.

*Lovejoy–Wilson,* 263 F.3d at 223–24.

For this reason, plaintiff's motion *in limine* is denied to the extent it seeks to preclude evidence pertaining to NOCO's reimbursement of plaintiff's wages for the period of her suspension.

### f. Plaintiff's Prior Employment

■ Finally, plaintiff seeks to preclude evidence pertaining to her prior work history with Tupperware, including a prior discrimination claim. It is generally recognized that Rule 404(b) of the Federal Rules of Evidence bars the use of evidence of a claim of discrimination against a previous employer as substantive proof of conduct in conformity therewith. Fed.R.Evid. 404(b); *see, e.g., Outley v. The City of New York,* 837 F.2d 587, 592–93 (2d Cir.1988); *cf. Pounds v. Board of Trustees,* 215 F.3d 1320, 2000 WL 655936, at \*4 (4th Cir.2000). However, a party may introduce such evidence for other purposes, including proof of intent or to challenge a witness's credibility on cross-examination. *Outley,* 837 F.2d at 593 (citing *United States v. Stockton,* 788 F.2d 210, 219 n. 15 (4th Cir.), *cert. denied,* 479 U.S. 840, 107 S.Ct. 147, 93 L.Ed.2d 89 (1986)). In determining whether to admit evidence under Rule 404(b), the Second Circuit "follow[s] an inclusionary rule, allowing the admission of such evidence for any purpose other than to show a [party]'s . . . propensity, as long as the evidence is relevant and satisfies the probative-prejudice balancing test of Rule 403 of the Federal Rules of Evidence." *United States v. Inserra,* 34 F.3d 83, 89 (2d Cir.1994), *quoted in Epstein v. Kalvin–Miller International, Inc.,* 121 F.Supp.2d 742, 748 (S.D.N.Y.2000).

Upon review of the current record, and after hearing oral argument on this issue, I find that there is insufficient information before the court to make a ruling on this aspect of plaintiff's motion *in limine* at this time. Notably, defendant's pretrial statement contains an extensive list of trial witnesses (including a brief statement of their anticipated testimony) and exhibits, but there is no specific indication that any of this proposed evidence pertains in any way to plaintiff's prior work history with Tupperware. Accordingly, defendant is directed to supplement its pretrial statement, not later than February 17, 2003, setting forth in detail what proof it intends to offer with respect to plaintiff's prior

251

work history, and for what purpose. Plaintiff's motion *in limine* is denied to the extent it seeks to preclude defendant from offering prior work history evidence, without prejudice to renew upon receipt of defendant's supplemental pretrial statement.

### CONCLUSION

For the foregoing reasons, defendant's motion to strike plaintiff's demand for a jury trial on her ADA claims for retaliation and failure to promote (Item 72) is denied.

Defendant's motion *in limine* (Item 66) is denied to the extent it seeks an order precluding plaintiff from offering evidence or argument at trial regarding the EEOC's investigation and findings, without prejudice to renew subject to the additional proceedings outlined herein.

Defendant's motion *in limine* is granted to the extent it seeks an order precluding plaintiff from offering evidence or argument at trial regarding the Second Circuit's decision.

Defendant's motion *in limine* is denied to the extent it seeks to preclude plaintiff from offering evidence or argument with respect to defendant's alleged failure to engage in the interactive process.

Defendant's motion (Item 83) to dismiss plaintiff's claim for punitive damage is denied.

Defendant's motion for separate trials on the issues of liability and damages (Item 71) is denied.

Plaintiff's motion *in limine* (Item 74) is denied in all respects. To the extent plaintiff's motion seeks to preclude defendant from offering prior work history evidence, the denial is without prejudice to renew upon receipt of defendant's supplemental pretrial statement, in accordance with the matters discussed herein.

It now appears that this case is ready for trial. The court determines that sub-

mission by each party of an updated pretrial statement in accordance with Local Rule 16.1(i) may be helpful to narrow the issues in this case. Such statements shall be filed not later than February 17, 2003, at which time the case will be referred to United States Magistrate Judge Hugh B. Scott for a settlement conference. The parties shall contact his chambers to arrange for a meeting subsequent to the February 17, 2003 deadline for updated pretrial statements. If settlement is not possible the court will meet with counsel on April 21, 2003 at 2 p.m. to fix a trial date. At present, the court is available for trial on May 19, 2003 or thereafter.

So ordered.